# EXHIBIT EE

Estate of Robert B. Mahon

# VCF Documentation



September 11th
Victim Compensation Fund

June 27, 2018

BEVERLY MAHON
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY  10271

Dear BEVERLY MAHON:

The September 11th Victim Compensation Fund ("VCF") has reviewed your Eligibility Form. You submitted an Eligibility Form on behalf of ROBERT MAHON.  Your claim number is VCF0098585.  Your Eligibility Form was determined to be substantially complete on June 26, 2018.  As stated in the Regulations and on the claim form, by filing a substantially complete Eligibility Form, you have waived your right to file or be a party to a September 11th-related lawsuit on behalf of the decedent and his or her survivors.

## The Decision on your Claim

The VCF has determined that the decedent has met the eligibility criteria established in the statute and regulations.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- MALIGNANT NEOPLASM UNS KIDNEY EXCEPT RENL PELVIS

Please note that there are several reasons why an injury that you think should be eligible is not listed above.  For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury. Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

## What Happens Next

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim.  Please see the VCF website for details on how to amend your claim.  The VCF will review the new information and determine if it provides the basis for a revised decision.

**If you believe the decedent had eligible injuries not treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating the amount of any



September 11th
Victim Compensation Fund

compensation, you should amend your claim.  If you choose to amend your claim, you will need to use the VCF Private Physician process.  The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim. All forms are available on the VCF website under "Forms and Resources."  The website also includes detailed information and instructions on the Private Physician process.

**If the decedent did not have injuries other than those listed above,** you should submit your Compensation Form and required supporting materials.  If you have already submitted your Compensation Form, you do not need to take any action at this time unless you receive a request from the VCF for missing information.  The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: BEVERLY MAHON



September 11th
Victim Compensation Fund

February 14, 2020

BEVERLY MAHON
122 THEODORE DRIVE
CORAM NY  11727

Dear BEVERLY MAHON:

The September 11th Victim Compensation Fund ("VCF") sent you a letter on April 16, 2019 notifying you of the amount of your award.  Your claim number is VCF0098585.

You then amended your claim to request additional losses.  The VCF has considered your amended claim and reviewed the new information you provided.  This letter sets forth the revised award and supersedes and replaces all previous letters.

After reviewing the responses in your claim form, the documents you submitted in support of your claim, and information from third-party entities, the VCF has calculated the amount of your award as **$493,619.76**.  This determination is in accordance with the requirements of the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act ("VCF Permanent Authorization Act").  The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions that were considered when calculating your award.

The VCF has determined that the loss of your husband's FDNY pension benefits, which terminated at his death, is not a loss compensable by the VCF.  That said, the Special Master recognizes the fairness disparity in a process whereby former first responders, such as your husband, who responded to the WTC site in the wake of the attacks, do not qualify for Line of Duty death designations from their former employers because they were not officially deployed to the response effort. Based on the circumstances presented in your claim, and in the discretion of the Special Master, your compensation award includes an additional $250,000 in economic loss.

No non-routine legal service expenses are approved for reimbursement for this claim.

As the Personal Representative, you are required to distribute any payment received from the VCF on behalf of the victim to the eligible survivors or other recipients in accordance with the applicable state law or any applicable ruling made by a court of competent jurisdiction or as provided by the Special Master.

## What Happens Next

You have already received a payment of $243,619.76.  You are now entitled to an additional payment of **$250,000.00**.  This amount is equal to the difference between your revised total award and the amount that has already been paid on your claim.



September 11th
Victim Compensation Fund

The VCF will deem this award to be final and will begin processing the full payment on your claim unless you complete and return the enclosed Compensation Appeal Request Form within **30 days from the date of this letter** as explained below. If you do not appeal, the Special Master will authorize the payment on your claim within 20 days of the end of the 30-day appeal period. Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the bank account designated on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF.

- **Appealing the Award**: You may request a hearing before the Special Master or her designee if you believe the amount of your award was erroneously calculated, or if you believe you can demonstrate extraordinary circumstances indicating that the calculation does not adequately address your loss. **If you choose to appeal, your payment will not be processed until your hearing has been held and a decision has been rendered on your appeal**.

  To appeal the award, you must complete two steps by the required deadlines:

  1. Complete and return the enclosed **Compensation Appeal Request Form** within **30 days from the date of this letter**. Follow the instructions on the form and upload it to your claim or mail it to the VCF by the required deadline. If you do not submit your completed Compensation Appeal Request Form within 30 days of the date of this letter, *you will have waived your right to an appeal* and the VCF will begin processing any payment due on your claim.

  2. Complete and submit your **Compensation Appeal Package** (Pre-Hearing Questionnaire, Compensation Explanation of Appeal, and all applicable supporting documents) no later than **60 days from the date of this letter**. It is important that you carefully review the information enclosed with this letter and follow the instructions if you intend to appeal your award. Additional instructions on the appeals process can be found on the VCF website under "Frequently Asked Questions" and in the "Policies and Procedures" document.

  Once your complete Compensation Appeal Package is submitted, the VCF will review the information to confirm you have a valid appeal, and will notify you of the next steps specific to your appeal and the scheduling of your hearing.

- **Amending your Claim**: You may amend your claim in the future if your circumstances change and you have new information to provide to the VCF that you believe warrants additional compensation. The VCF website has important information about the specific circumstances when it is appropriate to request an amendment. For more information and examples of such situations, please refer to "Section 5 – Amendments" in the VCF Policies and Procedures document available under "Forms and Resources" on the VCF website. Please review the information carefully when deciding whether to amend your claim. If you submit an amendment, the VCF will review the new information and determine if it provides the basis for a revised decision.



September 11th
Victim Compensation Fund

- **Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a change to your disability or survivor benefits, as this may change the amount of your award.  If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment.  If you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award.  If you need to notify the VCF of a new collateral source payment, please complete the "Collateral Offset Update Form" found under "Forms and Resources" on the www.vcf.gov website.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act.  As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: WENDELL TONG



September 11th
Victim Compensation Fund

# Award Detail

Claim Number:     VCF0098585
Decedent Name:    ROBERT MAHON

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $0.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | $0.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | $0.00 |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $0.00 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $0.00 |
| | |
| **Total Non-Economic Loss** | $250,000.00 |
| | |
| **Subtotal Award for Personal Injury Claim** | $250,000.00 |



September 11th
Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | $250,000.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | $0.00 |
| SSA Survivor Benefits | $0.00 |
| Worker's Compensation Death Benefits | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $250,000.00 |
| | |
| **Other Economic Losses** | |
| Replacement Services | $0.00 |
| Burial Costs | $13,110.00 |
| **Total Other Economic Losses** | $13,110.00 |
| | |
| **Total Economic Loss** | $263,110.00 |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | $250,000.00 |
| Non-Economic Loss - Spouse/Dependent(s) | $100,000.00 |
| **Total Non-Economic Loss** | $350,000.00 |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | ($255.00) |
| Life Insurance | ($17,525.16) |
| Other Offsets | ($51,710.08) |
| **Total Additional Offsets** | ($69,490.24) |
| | |
| **Subtotal Award for Deceased Claim** | $543,619.76 |



September 11th
Victim Compensation Fund

| Subtotal of Personal Injury and Deceased Claims | $793,619.76 |
|---|---|
| PSOB Offset | $0.00 |
| Prior Lawsuit Settlement Offset | $0.00 |
| Award Paid on Prior Personal Injury Claim | ($300,000.00) |
| TOTAL AWARD | $493,619.76 |
| | |
| Factors Underlying Economic Loss Calculation | |
| Annual Earnings Basis (without benefits) | |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | |

| Eligible Conditions Considered in Award |
|---|
| Malignant Neoplasm Uns Kidney Except Renl Pelvis |

# Family Member Affidavits

Robert B. Mahon, Jr.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re:

TERRORIST ATTACKS ON                                03-MDL-1570  (GBD)(SN)
SEPTEMBER 11, 2001


------------------------------------------------------------ X    **AFFIDAVIT OF <u>ROBERT B.</u>**
RAYMOND ALEXANDER, et al.,                          **<u>MAHON, JR.</u>**



                                   Plaintiffs,      21-CV-03505  (GBD)(SN)


                  V.

ISLAMIC REPUBLIC OF IRAN,

                                   Defendant.
------------------------------------------------------------ X

STATE OF NEW YORK          )
                           : SS
COUNTY OF MONROE           )


        ROBERT B. MAHON, JR., being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at
44 Sweden Hill Road, Brockport, New York 14420.

        2.      I am currently 61 years old, having been born on August 4, 1961.

        3.      I am the son of Decedent, Robert B. Mahon, upon whose death my claim is
based, and submit this Affidavit in connection with the present motion for a default
judgment and in support of my solatium claim.

        4.      My father passed away from metastatic renal cell cancer on April 8, 2016, at the
age of 81. It was medically determined that this illness was causally connected to his exposure to
the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

        5.      My father was a retired FDNY lieutenant who dedicated his time to his career and
to his family. As his only son, I spent more one-on-one time with my father and did everything

with him. We would often go fishing together, shoot B-B guns at the range, and compete in various sports and games, including ping pong, pool, and darts. Playing catch with a baseball or football was my favorite pastime with him when I was a boy. As I grew into adulthood, I viewed him as a role model and did everything I could to be just like him. He was an excellent teacher and would often coach me whenever he was not working. The life lessons he disclosed to me, however, were more important than anything he ever taught me in sports.

6.      On the day of the terrorist attacks on September 11, 2001, my dad had been retired from the fire department for seventeen years. When he saw the news on the television, he immediately prepared to leave the house and report to the World Trade Center site as soon as possible. He left with several of his fellow firemen, and they commuted together to the site of the attacks so that they could help respond and rescue as many people as they could. My father told me he arrived at the pile at a quarter past eleven o'clock and remained there all day until late evening, attempting to find as many victims and survivors as possible.

7.      Approximately nine years after the September 11th attacks, my father began losing blood and had to endure a few dozen blood transfusions. These blood transfusions continued until the doctors discovered a large mass in his hip and had to remove it. He was diagnosed with kidney cancer in 2012 and underwent a surgical procedure to have the kidney removed. The cancer metastasized even though the afflicted kidney had been taken out. One round of radiation treatment followed for weeks after the surgery, but nothing could help my father fully recover from the physical and emotional trauma of the cancer. I left my family in upstate New York and traveled down to my parents' home. I stayed there for three weeks to assist my parents and my sister with anything they needed assistance in. We did everything to remain optimistic and hope for the best, but my dad's health continued to decline, leading to an inevitable and grievous death.

8.      I could not salvage the sight of a sickly man who had once been strong and healthy for seventy-two years. He deteriorated rapidly during the final eight years of his life, and it is extremely difficult for me to come to terms with such a painful circumstance. His passing was a blessing in disguise for him because he would no longer suffer in such excruciating pain, but his absence is felt. I miss him all the time and I wish he did not have to leave us the way he did. I

will never forget him, and I will never forget the pain that the September 11th attacks afflicted on the people for the worse.

*Robert B. Mahon*

ROBERT B. MAHON, JR.

Sworn before me this

1st day of August, 2023

*Susan A. Henshaw*

Notary public

SUSAN A HENSHAW
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01HE6416665
QUALIFIED IN MONROE COUNTY
MY COMMISION EXPIRES 04-19-20 25

Lee Ann Mazzillo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                            03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

----------------------------------------------------------- X      **AFFIDAVIT OF <u>LEE ANN</u>**
RAYMOND ALEXANDER, et al.,                          **<u>MAZZILLO</u>**


                                    Plaintiffs,        21-CV-03505 (GBD)(SN)

                      V.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
----------------------------------------------------------- X

STATE OF NEW YORK          )
                           : SS
COUNTY OF SUFFOLK          )

LEE ANN MAZZILLO, being duly sworn, deposes and says:

1.      I am a plaintiff in the within action, am over 18 years of age, and reside at 64 Nelson Road, Selden, New York 11784.

2.      I am currently 54 years old, having been born on July 17, 1968.

3.      I am the daughter of Decedent, Robert B. Mahon, upon whose death my claim is based, and submit this Affidavit in connection with the present motion for a default money judgment for the claim made on behalf of my father's estate and for my solatium claim. On January 11, 2021, I was issued Successor Letters Testamentary on behalf of my father's estate by the Suffolk County Surrogate's Court.

4.      My father passed away from metastatic renal cell cancer on April 8, 2016, at the age of 81. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.     My father was a retired FDNY lieutenant. The captain had granted my father the position on the spot when he visited him at the fire academy where he taught. He dedicated his love and energy to his job and often shared stories of his experience with the family. People tend to perceive firefighters as heroes; my father was no exception to this. He was everyone's hero. He once rescued a baby from a burning building and was awarded recognition for it.  He was the one that influenced Ladder 117 in Astoria to be what it is today. He helped with construction efforts to provide more space in the firehouse. His picture currently hangs in the firehouse; it is as if he is there to guide his fellow firemen. I considered my father's firefighter colleagues to be my uncles. It was a very tight-knit community.

6.     I am the youngest of three siblings, but I served as my parents' primary helper and caregiver because I was always there. My siblings live far away from us, so my parents depended on me for anything they needed. Pop-Pop and I were particularly close. He was always my crutch whenever I needed him. Once he became ill, I became his crutch. My father's sickness only drew us closer because I was always there to take him to his medical appointments and console my mother when he was unable to. My life changed once my dad was stricken with the illness. His eventual passing was difficult to accept. It is one thing to lose your father to old age. It is another to lose him to terrorists.

7.     It was my daughter's first birthday on September 11, 2001. We planned a lovely dinner at my parents' house to celebrate. Everything changed, however, when we turned on the television and watched the horrifying tragedy on the news. My father had been retired for about twenty years by that time, but when he saw what occurred, he immediately phoned his firemen friends. They gathered at his house and left together for downtown Manhattan to respond to the

attacks. Part of the expressway was closed, but the police let my father and his friends through when they stuck out their firefighter helmets. Because he was retired, he could not pass a certain point and conduct manual labor, so he remained as close to the pile as possible with the Red Cross to hand out water and supplies and console the people in the area. The birthday dinner ended up not happening because my dad remained in the area for about twenty-two or twenty-three hours. My husband worked for the postal service at the time and was detained, so he did not come home until after nine o'clock in the evening. He picked up some Burger King on the way home, and that was our dinner. My mother stayed at my house that night. I don't believe we slept a wink until my father called between 10:00 and 11:00 in the morning to let us know he was coming home. He attended nineteen funerals held for firefighters, including those he did not personally know, before he stopped because he couldn't bear the grief and pain anymore.

8.      Pop-Pop began showing signs of illness in 2010 when he lost an unusual amount of blood, leading to extreme exhaustion and constant pasty countenance. He had to undergo thirty blood transfusions. The doctors were shocked that he did not feel any chills whenever they asked him because of the substantial amount of blood he lost. To this day I do not know what prompted the extensive loss of blood. It is not pleasant to ruminate over it. This strange condition lasted for about two years until Easter Sunday in 2012. I hosted an Easter Day luncheon at my house for the entire family. My father was awfully pasty during the celebration. As soon as the guests left, I told him to get in the car so that I could drive him to the emergency room. I had just gotten him into the van when he suddenly clasped his chest. I immediately dialed 911 because I knew I could not drive him to the hospital myself. During the six weeks he remained hospitalized, the doctors diagnosed him with kidney cancer and immediately had him undergo surgery to remove the afflicted kidney.

9.      My family and I were afraid of what was to come. My mother stayed with me because I did not want her living alone. There was a pet shop around the corner of my parents' home with the cutest shih-tzu puppy. I snapped photos of it and showed them to everyone at the hospital while we sat in the waiting room. My husband went and adopted the puppy for me as a surprise to cheer me up. I'll never forget that.

10.     My father was never the same after that surgery. When they removed the kidney, they removed a part of him as well. In 2014, the cancer metastasized and was given anywhere between six and twelve months to live. Chemotherapy was not an option because his sole kidney would not be strong enough to filter on its own. There was a pill he could have taken, but it cost about two thousand dollars. My mother couldn't afford to pay for such costly medication. By this point, Pop-Pop was exhausted. He did not want anything because he felt it would be futile. He did undergo one round of radiation. I was the one who took him – and his wheelchair – to his appointments, even though I had two small children at home and was found disabled by that point. My brother left his family upstate and stayed with us for three weeks to help out during this time. Despite my brother's presence, I was the one my father leaned on. And I would do it all again in a heartbeat because my dad was my hero. "This too shall pass," he would often say, and he was always right. I never got to properly grieve my father after he passed away because I had to take care of my mother. I was the one who handled the phone calls with insurance and other entities to switch everything to my mother's name. My mother carried on the best she could. I admire her for her strength during that time.

11.     My father was the rock of the family. When I bought my house, he was the one there to fix and renovate anything that had not been properly done. He assisted with financial hardships too. I can never forget the time I was reported for not having a permit to change my

garage to an additional bedroom in the house. The violation could be resolved if I purchased a 3-ring cesspool for ten thousand dollars. My loving father went and withdrew ten thousand dollars to give to me just like that. I can never forget that.

12.     My daughter shared a special bond with her grandfather. She was angry when she realized he became ill from exposure to the 9/11-related toxins. It was extremely difficult for her to celebrate her birthday every year, and she even refused to plan a sweet sixteen. It took almost twenty-one years before we could finally arrange a birthday party for her. She has written several essays for school regarding Pop-Pop, sharing stories of his heroism and bravery with everyone, and emphasizing his perseverance in courage and optimism despite all despair. My dad had surprised my son with a laptop. He had been a second father figure to my children.

13.     The doctors had said "anywhere between six and twelve months left" in 2014, but my father lived two years longer than expected. He passed away peacefully at home while the rest of the family and I attended one of my son's all-star basketball games. His loss severed us all, and to this day I struggle to live without my father. He was a hero who saved me in every way possible. I wish that hero were still with me.

LEE ANN MAZZILLO

Sworn before me this

1st day of August 2023

Notary public

CAROL A DACCORDO
Notary Public - State of New York
NO. 01DA6431707
Qualified in Suffolk County
My Commission Expires Apr 18, 2026