# EXHIBIT CC

Estate of Andrew Libo

# VCF Documentation

September 11th
Victim Compensation Fund

September 8, 2020

JEAN MEYEROWITZ
C/O WENDELL TONG
SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO, PC
120 BROADWAY 18TH FLOOR
NEW YORK NY  10271

**Re: CLAIM NUMBER: VCF0121318**

Dear JEAN MEYEROWITZ:

The September 11th Victim Compensation Fund ("VCF") has reviewed your claim for eligibility.  You submitted a claim form on behalf of ANDREW LIBO.

**The Decision on your Claim**

The VCF has determined that the decedent has met the eligibility criteria established in the statute and regulations.  Based on the information you submitted and information the VCF has received from the World Trade Center ("WTC") Health Program, the decedent has been found eligible for the following injuries:

- MALIGNANT NEOPLASM OF THE BRAIN - GLIOBLASTOMA

Please note that there are several reasons why an injury that you think should be eligible is not listed above.  For non-traumatic injuries, the name of the injury is based on the information provided by the WTC Health Program and there may be different names for the same injury. Additionally, your injury may not be listed if it was only recently certified for treatment by the WTC Health Program.

If in the future the WTC Health Program should notify you that a condition previously found eligible is no longer certified, you must inform the VCF as this may affect your eligibility status and/or the amount of your award.

**What Happens Next**

**If the decedent was certified for treatment by the WTC Health Program for a condition not listed above**, you should amend your claim.  Please see the VCF website for details on how to amend your claim.  The VCF will review the new information and determine if it provides the basis for a revised decision.

**If you believe the decedent had eligible injuries not treated by the WTC Health Program** and you would like the VCF to consider those injuries before calculating the amount of any compensation, you should amend your claim.  If you choose to amend your claim, you will need to use the VCF Private Physician process.  The Private Physician process is a way for the VCF to gather the required information about the decedent's treatment in order to process your claim.



September 11th
Victim Compensation Fund

All forms are available on the VCF website under "Forms and Resources." The website also includes detailed information and instructions on the Private Physician process.

**If the decedent did not have injuries other than those listed above,** you should submit the compensation section of your claim form and the required supporting materials if you have not already done so. If you have already submitted this information, you do not need to take any action at this time unless you receive a request from the VCF for missing information. The VCF will calculate the amount of any compensation based on the conditions listed above after all compensation-related documents are submitted.

If you have questions about the information in this letter or the claims process in general, please call our toll-free Helpline at 1-855-885-1555. Please have your claim number ready when you call: **VCF0121318**. For the hearing impaired, please call 1-855-885-1558 (TDD). If you are calling from outside the United States, please call 1-202-514-1100.

Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund

cc: JEAN MEYEROWITZ

**September 11th
Victim Compensation Fund**

April 2, 2021

JEAN MEYEROWITZ

███████████████████
█████████████████

      **Re: CLAIM NUMBER: VCF0121318**

Dear JEAN MEYEROWITZ:

The September 11th Victim Compensation Fund ("VCF") sent you a letter on February 17, 2021 notifying you of the decision on your claim and the amount of your award. That letter included a request for documents that were missing from your claim and are required in order to process your payment. The VCF has since received the requested documents and this letter provides the details of your award and information on the next steps to be taken on your claim.

After reviewing the responses in your claim form, the documents you submitted in support of your claim, and information from third-party entities, the VCF has calculated the amount of your award as ████████████. This determination is in accordance with the requirements of the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act ("VCF Permanent Authorization Act"). The enclosed "Award Detail" includes a detailed explanation of the calculation and a list of the eligible conditions that were considered when calculating your award.

No non-routine legal service expenses are approved for reimbursement for this claim.

As the Personal Representative, you are required to distribute any payment received from the VCF on behalf of the victim to the eligible survivors or other recipients in accordance with the applicable state law or any applicable ruling made by a court of competent jurisdiction or as provided by the Special Master.

**What Happens Next**

The VCF will deem this award to be final and will begin processing the full payment on your claim unless you complete and return the enclosed Compensation Appeal Request Form within **30 days from the date of this letter** as explained below. If you do not appeal, the Special Master will authorize the payment on your claim within 20 days of the end of the 30-day appeal period. Once the Special Master has authorized the payment, it may take up to three weeks for the United States Treasury to disburse the money into the bank account designated on the VCF ACH Payment Information Form or other payment authorization document you submitted to the VCF.

- **Appealing the Award**: You may request a hearing before the Special Master or her designee if you believe the amount of your award was erroneously calculated, or if you



**September 11th
Victim Compensation Fund**

believe you can demonstrate extraordinary circumstances indicating that the calculation does not adequately address your loss.  **If you choose to appeal, your payment will not be processed until your hearing has been held and a decision has been rendered on your appeal**.

To appeal the award, you must complete two steps by the required deadlines:

1. Complete and return the enclosed **Compensation Appeal Request Form** within **30 days from the date of this letter**.  Follow the instructions on the form and upload it to your claim or mail it to the VCF by the required deadline.  If you do not submit your completed Compensation Appeal Request Form within 30 days of the date of this letter, *you will have waived your right to an appeal* and the VCF will begin processing any payment due on your claim.

2. Complete and submit your **Compensation Appeal Package** (Pre-Hearing Questionnaire, Compensation Explanation of Appeal, and all applicable supporting documents) no later than **60 days from the date of this letter**. It is important that you carefully review the information enclosed with this letter and follow the instructions if you intend to appeal your award. Additional instructions on the appeals process can be found on the VCF website under "Frequently Asked Questions" and in the Policies and Procedures available under "Forms and Resources."

Once your complete Compensation Appeal Package is submitted, the VCF will review the information to confirm you have a valid appeal, and will notify you of the next steps specific to your appeal and the scheduling of your hearing.

- **Notifying the VCF of new Collateral Source Payments**: You must inform the VCF of any new collateral source payments you receive, or become entitled to receive, such as a change to your disability or survivor benefits, as this may change the amount of your award.  If you notify the VCF within 90 days of learning of the new collateral source payment, your award will not be adjusted to reflect the new entitlement or payment.  If you notify the VCF more than 90 days after learning of the new or revised entitlement or payment, the VCF may adjust your award to reflect the new payment as an offset, which may result in a lower award.  If you need to notify the VCF of a new collateral source payment, please complete the "Collateral Offset Update Form" found under "Forms and Resources" on the www.vcf.gov website.

Your award was calculated using our published regulations, and I believe it is fair and reasonable under the requirements of the VCF Permanent Authorization Act.  As always, I emphasize that no amount of money can alleviate the losses suffered on September 11, 2001.

If you have any questions, please call our toll-free Helpline at 1-855-885-1555.  Please have your claim number ready when you call: **VCF0121318**.  For the hearing impaired, please call 1-855-885-1558 (TDD).  If you are calling from outside the United States, please call 1-202-514-1100.



Sincerely,

Rupa Bhattacharyya
Special Master
September 11th Victim Compensation Fund


cc: WENDELL TONG



September 11th
Victim Compensation Fund

# Award Detail

Claim Number:    VCF0121318
Decedent Name:    ANDREW LIBO

| PERSONAL INJURY CLAIM (Losses up to Date of Death) | |
|---|---|
| **Lost Earnings and Benefits** | |
| Loss of Earnings including Benefits and Pension | $0.00 |
| Mitigating or Residual Earnings | $0.00 |
| **Total Lost Earnings and Benefits** | $0.00 |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Disability Pension | $0.00 |
| Social Security Disability Benefits | $0.00 |
| Workers Compensation Disability Benefits | $0.00 |
| Disability Insurance | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Lost Earnings** | $0.00 |
| | |
| **Total Lost Earnings and Benefits Awarded** | $0.00 |
| | |
| **Other Economic Losses** | |
| Medical Expense Loss | $0.00 |
| Replacement Services | $0.00 |
| **Total Other Economic Losses** | $0.00 |
| | |
| **Total Economic Loss** | $0.00 |
| | |
| **Total Non-Economic Loss** | ████ |
| | |
| **Subtotal Award for Personal Injury Claim** | ████ |



September 11th
Victim Compensation Fund

| DECEASED CLAIM (Losses from Date of Death) | |
|---|---|
| **Loss of Earnings including Benefits and Pension** | ▉ |
| | |
| **Offsets Applicable to Lost Earnings and Benefits** | |
| Survivor Pension | $0.00 |
| SSA Survivor Benefits | ▉ |
| Worker's Compensation Death Benefits | $0.00 |
| Other Offsets related to Earnings | $0.00 |
| **Total Offsets Applicable to Loss of Earnings and Benefits** | ▉ |
| | |
| **Total Lost Earnings and Benefits Awarded** | ▉ |
| | |
| **Other Economic Losses** | |
| Replacement Services | ▉ |
| Burial Costs | $0.00 |
| **Total Other Economic Losses** | ▉ |
| | |
| **Total Economic Loss** | ▉ |
| | |
| **Non-Economic Loss** | |
| Non-Economic Loss - Decedent | ▉ |
| Non-Economic Loss - Spouse/Dependent(s) | ▉ |
| **Total Non-Economic Loss** | ▉ |
| | |
| **Additional Offsets** | |
| Social Security Death Benefits | ▉ |
| Life Insurance | ▉ |
| Other Offsets | $0.00 |
| **Total Additional Offsets** | ▉ |
| | |
| **Subtotal Award for Deceased Claim** | ▉ |



September 11th
Victim Compensation Fund

| Subtotal of Personal Injury and Deceased Claims | |
|---|---|
| PSOB Offset | $0.00 |
| Prior Lawsuit Settlement Offset | $0.00 |
| **TOTAL AWARD** | |
| | |
| **Factors Underlying Economic Loss Calculation** | |
| Annual Earnings Basis (without benefits) | |
| Percentage of Disability attributed to Eligible Conditions - applicable to Personal Injury losses | |
| Start Date of Loss of Earnings Due to Disability - applicable to Personal Injury losses | |

| Eligible Conditions Considered in Award |
|---|
| Malignant Neoplasm of The Brain - Glioblastoma |

# Family Member Affidavits

Ethan Libo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

In Re:

03-MDL-1570 (GBD)(SN)

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

**AFFIDAVIT OF
ETHAN LIBO**

---------------------------------------------------------------- X

RAYMOND ALEXANDER, et al.,

                              Plaintiffs,        21-CV-03505 (GBD)(SN)

                V.

ISLAMIC REPUBLIC OF IRAN,

                              Defendant.

---------------------------------------------------------------- X

STATE OF NEW YORK        )
                         : SS
COUNTY OF WESTCHESTER    )

ETHAN LIBO, being duly sworn, deposes and says:

1.      I am a plaintiff in the within action, am over 18 years of age, and reside at

███████████████████████████

2.      I am currently 24 years old, having been born on ████████

3.      I am the son of Decedent, Andrew Libo, upon whose death my claim is based, and submit this Affidavit in connection with the present motion for a default judgment and in support of my solatium claim.

4.      My father passed away from brain cancer on October 25, 2011, at the age of 54. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.    I was 12 years old when my father passed away. So, it has now been half of my life without him. However, I will never forget memories we shared such as playing wiffle ball in the backyard, going to Yankee games, as well as all the time he spent as my little league coach. One very special moment I shared with my father happened just before he got sick. He had started to feel bad symptoms, but we didn't think much of it. We were watching a Yankees playoff game together, and my dad, who was usually very animated when watching baseball, could barely sit in place and watch the game because his head hurt so much. Despite being unable to move the entire night, we both exploded in joy and shared a hug in the bottom of the ninth inning when the Yankees tied, the game being down to their last out. My dad was diagnosed with cancer just a few days later. That is what made the moment so special looking back; even though he was feeling so ill, he still got up and celebrated with his son.

6.    I have no recollection of 9/11 as I was only 2 years old when it happened. I do know that my father was working at Gersowitz, Libo & Korek in downtown Manhattan just a block away from Ground Zero.  He had extensive exposure to the toxins while working at his office at Gersowitz, Libo & Korek.

7.    My father's illness was as bad as it can get. Once he got diagnosed, we knew his life was like a ticking time bomb. His tumor was removed right away and he received extensive chemotherapy, which made him feel horrible, but was necessary to prolong what little time he had left. Glioblastomas (the type of tumor he had) are very aggressive, and we knew it would most certainly be back within two years. Once the cancer came back, I watched my father deteriorate over a period of a few months. It started with smaller things like losing his coordination and athletic ability, but eventually he started speaking less and less, and during his last month he was unable to speak or even really move at all.

8.    It is hard to know for certain the effect it has had on my life because I was so young. What I do know is that I was robbed of the chance of ever really knowing my father. I knew him as a child and I loved him, but I never had the opportunity to develop a relationship

with him as an adult.

_____
ETHAN LIBO

Sworn before me this

25th day of Sept , 2023

Notary public

DONALD GOLDSMITH
Notary Public, State of New York
No. 01GO5021034
Qualified in Westchester County
Commission Expires Dec. 6, 2025

Matthew Libo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                          03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

-------------------------------------------------------------- X          **AFFIDAVIT OF**
RAYMOND ALEXANDER, et al.,                              **MATTHEW LIBO**


                                    Plaintiffs,          21-CV-03505 (GBD)(SN)


                    V.


ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
-------------------------------------------------------------- X

STATE OF NEW YORK              )
                              : SS
COUNTY OF WESTCHESTER )


        MATTHEW LIBO, being duly sworn, deposes and says:

        1.      I am a plaintiff in the within action, am over 18 years of age, and reside at

████████████████████████████████████

        2.      I am currently 26 years old, having been born on ██████████

        3.      I am the son of Decedent, Andrew Libo, upon whose death my claim is based,

and submit this Affidavit in connection with the present motion for a default judgment

and in support of my solatium claim.

        4.      My father passed away from brain cancer on October 25, 2011, at the age of 54.

It was medically determined that this illness was causally connected to his exposure to the toxins

resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.      Andrew Libo was my father; he was an attorney. We did a lot together. He coached me in sports growing up, like soccer and little league baseball. We watched the Yankees together every night when they were on at home, and we went to lots of games together, including my first World Series game. My father loved golf and we used to play together. I have a very good memory of us competing in a father-son golf tournament and being one of the highest placing teams. He used to help me with my homework after school and took our family on vacations.

6.      I was in preschool on the day of 9/11. I remember being picked up at school early and seeing people very upset. I remember seeing ash, smoke, and firefighters on the tv at home.

7.      I remember my mom not showing up to pick me up from school one day, and I found out she and my dad were at the hospital. I learned he had a tumor on his brain, and he needed surgery to remove it. My father had brain surgery, which left a huge scar on his head. They weren't sure if it was cancerous at first, and then we found out it was. My mom and dad had to fly to North Carolina every few weeks to see doctors. He received radiation therapy which made his hair fall out, and he received chemotherapy which made him very sick. His memory was strongly affected; he started forgetting many things and saying things that didn't make sense. Eventually, he stopped being able to talk and started having lots of tremors and seizures. He also stopped being able to walk, could barely move, and couldn't swallow food.

8.      My father died right at the start of my freshman year of high school. I missed out on having a father to guide me, participate in my life, and watch me grow up. My father was not there for big milestones in my life like graduating high school, graduating college, and when I got my first job. I've missed out on valuable advice and knowledge throughout all these years. There are many father-son experiences that I will never have now, both new experiences and continuing to do the things we used to do together (mentioned in paragraph 5). He also will not be there for future milestones and important moments in my life.

MATTHEW LIBO

Sworn before me this
25 day of ____, 2023

_____
Notary public

DONALD GOLDSMITH
Notary Public, State of New York
No. 01GO5021034
Qualified in Westchester County
Commission Expires Dec. 6, 20__

Sanford Libo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

In Re:

TERRORIST ATTACKS ON                                        03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------- X      **AFFIDAVIT OF**
RAYMOND ALEXANDER, et al.,                                          **SANFORD LIBO**


                                          Plaintiffs,         21-CV-03505 (GBD)(SN)


                    V.

ISLAMIC REPUBLIC OF IRAN,

                                          Defendant.
------------------------------------------------------------- X

STATE OF NEW YORK              )
                               : SS
COUNTY OF WESTCHESTER )

SANFORD LIBO, being duly sworn, deposes and says:

    1.    I am a plaintiff in the within action, am over 18 years of age, and reside at

    ██████████████████

    2.    I am currently 27 years old, having been born on ████████████

    3.    I am the son of Decedent, Andrew Libo, upon whose death my claim is based,
and submit this Affidavit in connection with the present motion for a default judgment
and in support of my solatium claim.

    4.    My father passed away from brain cancer on October 25, 2011, at the age of 54.
It was medically determined that this illness was causally connected to his exposure to the toxins
resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.     The Decedent was my father, a personal injury attorney who worked in New York City. My father had a huge impact on my life, and I have many special memories of him. I have great memories of us playing catch on the beach, attending Yankee games with him and my brothers, and him taking me to my first concerts. My dad was a great role model who taught me work ethic and the importance of education. I have memories of him taking the time to quiz me on vocabulary words after he would get home from work. I also remember his wonderfully bizarre and quirky sense of humor; this is something I have greatly missed in the years since his passing.

6.     My father happened to call out sick on the day of 9/11. I have a very hazy memory of that day as I was only 6 years old, but one thing I do remember is my father picking me up from school early. Additionally, I remember walking into my parents' room and seeing TV coverage of the buildings. While my dad wasn't in the office on the day of 9/11, he worked in the NYC Exposure Zone five days a week up until his eventual passing in October of 2011.

7.     During the period between my father's brain cancer diagnosis and his death two years later, I saw a rapid decline in his quality of life. I remember my father having intense migraines and going to the hospital before he was eventually told of his diagnosis. The chemotherapy treatment given to my dad caused extreme fatigue, nausea, and irritability. Eventually between the months of May and October of 2011, I saw my dad's mental faculties severely decline. At first, he was doing things that were very unlike him, such as staying in his car for hours listening to music before coming into the house or making statements that made very little sense. Eventually he lost the ability to speak, lost his motor functions, and suffered from tremors.

8.     My dad's illness and death had a profound negative impact on my life. Watching him decline mentally and physically up until his death was incredibly traumatizing. I also missed out on having my father around for important milestones in my life, such as graduating from high school and college.

_____    11/8/2023
SANFORD LIBO

Sworn before me this
_9th_ day of _Nov_ , 2023

_____
Notary public

ZETA J.CHEN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01CH6305856
Qualified in Kings County
Commission Expires June 16,2026

Jean Meyerowitz

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

In Re:

TERRORIST ATTACKS ON                           03-MDL-1570 (GBD)(SN)
SEPTEMBER 11, 2001

------------------------------------------------------------------ X        **AFFIDAVIT OF**
RAYMOND ALEXANDER, et al.,                            **JEAN MEYEROWITZ**


                                    Plaintiffs,        21-CV-03505 (GBD)(SN)

                V.

ISLAMIC REPUBLIC OF IRAN,

                                    Defendant.
------------------------------------------------------------------ X

STATE OF NEW YORK          )
                           : SS
COUNTY OF WESTCHESTER )


JEAN MEYEROWITZ, being duly sworn, deposes and says:

1.    I am a plaintiff in the within action, am over 18 years of age, and reside at

█████████████████████████████████

2.    I am currently 50 years old, having been born on ████████████

3.    I am the wife of Decedent, Andrew Libo, upon whose death my claims are based. I submit this Affidavit in support of the present motion for default money judgment for the claim made on behalf of my husband's estate and for my solatium claim. On May 14, 2023, I was issued Letters Testamentary as Executrix of my husband's estate by the Westchester County Surrogate's Court.

4.    My husband passed away from brain cancer on October 25, 2011, at the age of 54. It was medically determined that this illness was causally connected to his exposure to the toxins resulting from the September 11, 2001, terrorist attacks at the World Trade Center.

5.    Andrew Libo was my husband. We met in 1990 and married in 1993. We had three children together in 1995, 1997 and 1999. Before we had kids, we lived in New York City and were both working as attorneys; I worked for a small law firm and Andy ran his own law firm. We moved to Westchester in 1999, just before our third son was born. Andy loved his work, he really enjoyed both the business and law side of his practice, "Gersowitz, Libo and Korek". But he also loved playing tennis, golf and, most importantly, being with his three sons, playing ball with them, and coaching all three in both baseball little league and soccer. He loved watching his kids compete and playing with them for fun. In addition, Andy's parents lived a half hour drive away in Stamford, Connecticut and we spent a lot of time with them. We had family dinners, holidays and even played sports and card games with them. Andy was an amazing person, very sensitive, kind, and modest. He had a lot of great friends and gave great advice. Everyone misses him to this day.

6.    Andy and I enjoyed hiking, dog walking, playing tennis, and socializing. We sometime travelled with four other couples, to places like Cape Cod where we rode bikes, played tennis, and swam in the ocean. We travelled as much as we could and looked forward to more travel when our kids would be grown. Our life was amazing in so many ways; it hummed along until Andy's shocking diagnosis in November of 2009. Andy impacted my life immeasurably; he was a very wise and, at the same time, funny person. He knew how to put things in perspective, and he also worked hard for his family. Most importantly, Andy loved being a father. I remember walking our oldest son in Central Park when he was an infant and Andy looking around at younger/single people and saying that they did not know what it meant to be a father and how special it was. When Andy was diagnosed, the first thing he asked the doctor was if he would be able to see his kids graduate. The doctor said probably not, and Andy said not from high school either, and the doctor shook his head no. That was heartbreaking.

7.    Andy and I had a strong bond and a great marriage; I loved and trusted him so much and he me. Once he was diagnosed, I felt compelled to be a supportive person to see him through this awful tragedy. It was almost my honor to be there for him, but it was the worst time in my life.

8.      Andy's law firm was and still is situated at 111 Broadway, very close to the twin towers. Andy was not at work yet when 9/11 happened. He had stopped at the dry cleaners on his way to work and then returned to our house upon hearing the news of activity downtown by his office. I had just returned from dropping my children at pre-kindergarten and kindergarten. Several people in my community, both teachers and families, were waiting to hear from their loved ones who worked in the WTC. Many of those working there did not return home. Andy was on the phone with his partners all day, making sure their employees got out of the building and were safe. Andy could not reach his secretary. At 10:00 pm that same night she called and let him know that she had just got home. Andy did not return to work downtown for a couple of months. Hazmat came to his offices and cleaned all the residue and dust out of the office as best they could. Andy and his partners returned that same year full-time and started working there again. He was there every day until he was diagnosed with glioblastoma in 2009.

9.      Andy complained that he had a strange headache. A couple of weeks went by, and he went to the doctor who was checking him for Lyme disease. About a week later, Andy was driving my middle son and a friend to another person's house a half hour away, and Andy reported he was feeling strange and had to pull over and get a cup of coffee. Then a few days later he was so nauseous he was throwing up. We went to the ER at White Plains Hospital in the morning around November 7th, where they did not look at him for several hours and into the evening. Sometime later that night, they did a scan and told us he had a brain tumor. Everything tumbled from there.

10.     Andy decided to be treated by Dr. Henry Friedman at Duke. He received Avastin and a chemotherapy drip called Tamadar every other week (I believe) in New York City. Andy had to go on anti-seizure medication and was not allowed to drive a car. He took a lot of vitamins and other pills and started to eat a careful diet of vegetables and organic food and low sugar. He was very sick for the first few days after his chemotherapy. Then he was better several days later. We did not travel or do too many things. He was tired but still tried to lead a normal life as best as possible. In addition, the Avastin could cause bleeding, so he had to be careful.

11.    I lost my lifetime partner and missed out on watching our children grow up together. I missed out on their father supporting me and helping to raise them (all boys). Additionally, my children had to grow up without a dad; they were 12, 14 and 16 when he died. Every milestone we missed him, from soccer games, proms, family celebrations, my 50th birthday (and future ones), college applications, graduations, religious holidays, his nieces' and nephews' weddings, his parents' birthday celebrations as he predeceased them, and so much more. I developed anxiety as a result of trying to figure out how to care for him. As the tumor returned, he lost the ability to communicate with me, to walk, and to do most things. I had to talk to my kids about their father dying and prepare them. I also realized that, at 49, my life as I knew it was pretty much over as I watched Andy slide into a decline. I felt too young to have to face losing my life partner and to miss out on all that was ahead of us.

JEAN MEYEROWITZ

Sworn before me this
_____ day of _____, 2023

Notary public

DONALD GOLDSMITH
Notary Public, State of New York
No. 01GO5021034
Qualified in Westchester County
Commission Expires Dec. 6, 20__